UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

KAREN JOHNSON, individually and as )
Personal Representative of the Estate of )
Matilda Tidwell, deceased, )
 )
               Plaintiff, )
v. )   Case No. CIV-24-1073-R
 )
PF CRYSTAL PARK SNF OPS, )
LLC; & STONEGATE SENIOR )
LIVING, L.P., )
 )
               Defendants. )

## ORDER

Before the Court is Plaintiff Karen Johnson's Motion to Compel Discovery Responses from Defendant PF Crystal Park SNF Ops, LLC [Doc. No. 33]. Defendant responded [Doc. No. 34] and Plaintiff replied [Doc. No. 35]. The matter is now at issue.

### BACKGROUND[1]

In February of 2022, 94-year-old Matilda Tidwell was hospitalized after sustaining head injuries from falling in her home. Doc. No. 17 at p. 1. Ms. Tidwell was thereafter admitted to Accel at Crystal Park, a nursing facility owned and operated by Defendants, on March 3, 2022. *Id.* On March 14, a certified medication aide ("CMA") at Accel incorrectly administered 100 mg of morphine, intended for another patient, to Ms. Tidwell. *Id.* Ms.

---

[1] Due to the dearth of factual allegations in the Amended Petition [Doc. No. 14-9], most of the background facts are taken from the parties' Joint Status Report and Discovery Plan, filed December 20, 2024 [Doc. No. 17]. In accordance with this District's nomenclature, the Amended Petition will hereafter be called the Complaint.

1

Tidwell was taken to the hospital after this incident and on March 20, 2022, was transferred to hospice care, where she passed away the following day. *Id.* at pp. 1-2.

Plaintiff Karen Johnson, Ms. Tidwell's daughter, brought this lawsuit asserting that Defendants and Defendants' agents, ostensible agents, servants, and employees were willful, reckless, and negligent in the medical and nursing care provided to Ms. Tidwell and in fulfilling their administrative and supervisory duties. Plaintiff argues such conduct was the direct cause of Ms. Tidwell's death.

Plaintiff now moves to compel Defendant to (1) produce various documents related to Ms. Tidwell's treatment and Accel's medication administration, policies, and procedures and (2) provide Plaintiff with the names of the members of Accel's governing body.

## LEGAL STANDARD

Under Rule 26(b), district courts have substantial discretion in handling discovery requests. *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1164 (10th Cir. 2010). But they are not without instruction. Rule 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In permitting or denying discovery requests, courts are instructed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

"[R]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or

defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Information "need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

"Rule 26 requires the Court to limit the scope of discovery—as pertinent here—if (1) the discovery sought is unreasonably burdensome or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; or (2) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Jobson v. United States ex rel. Dep't of Veteran Affs.*, No. CIV-17-574-SLP, 2018 WL 8299885, at *2 (W.D. Okla. Aug. 27, 2018) (citing FED. R. CIV. P. 26(b)(2)(C)).

"A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

## DISCUSSION

### I.     Request for Production No. 19

RFP No. 19 asks for all documents generated as part of Defendant's investigation into the medication error involving Ms. Tidwell. Defendant indicated the existence of one document responsive to RFP 19: a Medication Error Report [*See* Doc. No. 33-3.]. Defendant's Response indicates it has provided Plaintiff with the Medication Error Report

3

and Plaintiff does not appear to dispute this. Plaintiff's Motion to Compel Defendant to comply with RFP No. 19 is therefore MOOT.

## II.     Request for Production No. 9

RFP No. 9 seeks communications relating to Matilda Tidwell that were not included in the nursing center's chart. Defendant initially denied this request due to concerns that it implicated privileged communications and quality assurance and peer review documents. Plaintiff later assured Defendant she is not seeking any attorney-client communications and has represented she is not seeking quality assurance or peer review materials. Defendant indicates it is searching for and will provide any relevant, non-privileged pre-litigation responsive documents it finds. Plaintiff does not appear to dispute this compromise. Based on the parties' representations, to the extent Defendant locates such documents, and with the limitations outlined by Defendant, Plaintiff's Motion to Compel Defendant to comply with RFP No. 9 is GRANTED.

## III.    Request for Production Nos. 5 & 9 and Interrogatory 17

The remaining discovery disputes center around the theories of liability Plaintiff plans to assert against Defendant. The theories Plaintiff proceeds with will help determine the scope of discovery, and as an initial matter, the Court will address the parties' dispute over which theories Plaintiff may utilize.

Plaintiff intends to assert multiple theories of Defendant's liability for her claims: (1) that the CMA was negligent in administering the morphine (and therefore, the Court assumes, that Defendant is vicariously liable for her actions) and (2) that Defendant was directly negligent in fulfilling its administrative and supervisory duties. The Joint Status

4

Report also indicates Plaintiff's contention that Defendant was directly negligent in the hiring, training, retention, and supervision of its employees. Defendant argues that Plaintiff's assertions of Defendant's direct negligence are incorrect and irrelevant.

Oklahoma courts have held that when an employer's vicarious liability, if any, for its employees' harms is established through stipulation, claims against the employer for negligent hiring, training, or supervision are unavailable. *Huntley v. City of Owasso*, 497 Fed. App'x 826, 834 (10th Cir. 2012) (unpublished) (citing *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999); *Jordan v. Cates*, 935 P.2d 289, 293 (Okla. 1997)). Moreover, Oklahoma courts have stated that in "situations where the employer stipulates that liability, if any, would be under the *respondeat superior* doctrine, . . . any other theory for imposing liability on the employer [is] unnecessary and superfluous." *Jordan*, 935 P.2d at 293.

In its Response, Defendant argues that because it does not seek to avoid liability for the CMA's medication error if the jury decides the error caused Ms. Tidwell's death, Plaintiff's theories of Defendant's direct negligence are unnecessary.[2] But the Court is

---

[2] When referring to Plaintiff's direct negligence claims, the parties use the term "corporate-negligence." The Oklahoma Supreme Court adopted the corporate negligence doctrine in 1995, based on an independent duty of hospitals to ensure the safety and welfare of their patients while confined within the hospital. *See Strubhart v. Perry Mem'l Hosp. Tr. Auth.*, 903 P.2d 263 (Okla. 1995). However, the Oklahoma Supreme Court limited the doctrine to "imposing a duty of ordinary care on hospitals to ensure that: 1) only competent physicians are granted staff privileges, and 2) once staff privileges have been granted to a competent physician the hospital takes reasonable steps to ensure patient safety when it knows or should know the staff physician has engaged in a pattern of incompetent behavior." *Id.* at 276. This case is infrequently cited in Oklahoma and Plaintiff's Complaint does not appear to assert a claim using the doctrine of corporate-negligence, nor does either party argue in-depth whether this doctrine even applies to nursing homes and CMAs. At

5

unaware of any stipulation that Defendant's liability would fall under the *respondeat superior* doctrine. In fact, in the parties' Joint Status Report, Defendant appears to disclaim vicarious liability, arguing Ms. Tidwell's injuries resulted from acts or omissions of employees or third parties acting outside the scope of their employment. At this point, Defendant's direct liability for allegedly negligent fulfillment of its administrative and supervisory duties remains at issue. The Court will judge the relevance and proportionality of Plaintiff's remaining discovery requests accordingly.

### A. Request for Production No. 5

RFP No. 5 seeks the unredacted version of a 162-paged Administrative Medication Report, which details the medications administered to patients at Accel on the date of Ms. Tidwell's death. Defendant produced the Report but redacted all information for every patient except Ms. Tidwell, arguing Plaintiff's request is overly broad and disproportionate to the needs of the case. Defendant also asserts such information is irrelevant and confidential/privileged pursuant to OKLA. STAT. tit. 12 § 2503 and HIPAA.

An unredacted version of the Report would indicate how many patients were receiving opioids, what dosages they were receiving, where they were located, and who administered the medications. Plaintiff argues the Report is relevant because it may indicate whether the CMA mistakenly gave Ms. Tidwell another patient's medication and whether she was responsible for too many patients or medications. This Court agrees,

---

this time, the Court declines to rule on whether this doctrine is applicable or not and encourages the parties to adjust their terminology if it so happens that Plaintiff is not relying upon the *Strubhart* corporate-negligence doctrine.

6

particularly in light of Plaintiff's assertions of Defendant's direct negligence, that such information is relevant and discovery of the Report is proportionate to the needs of the case.

Defendant also asserts the Report is protected by Oklahoma's physician-patient privilege pursuant to OKLA. STAT. tit. 12 § 2503, which applies to "confidential communications made for the purpose of diagnosis or treatment." OKLA. STAT. tit. 12 § 2503(B). Beyond a conclusory assertion, Defendant has not articulated how the physician-patient privilege applies to the Report, which does not seem to contain patient communications for treatment purposes. At this time, therefore, the Court declines to find the Report protected by physician-patient privilege. *See Jackson v. Terrace Gardens Nursing Ctr., LLC*, No. CIV-23-00319-JD, 2025 WL 1020888, at *3 (W.D. Okla. Apr. 4, 2025) (quoting *Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235, 1240 (D.N.M. 2022)) ("'The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable' despite the broad scope of discovery under Rule 26. . . . The objecting party 'may not rely on boilerplate, generalized, conclusory or speculative arguments' because '[a]rguments against discovery must be supported by specific examples and articulated reasoning.'") (citation and quotation marks omitted). *See also Hussein v. Duncan Reg'l Hosp., Inc.*, No. CIV-07-0439-F, 2009 WL 10672479, at *1 n.1 (W.D. Okla. Apr. 28, 2019) (although defendants contended records were protected by physician-patient privilege, court did not discuss such arguments because defendants' memorandum only developed HIPAA-based objections).

Defendant also states, without support, that the Report is protected by HIPAA. But "HIPAA provides that '[a] covered entity may disclose protected health information in the course of any judicial . . . proceeding . . . [i]n response to an order of a court . . . , provided that the covered entity discloses only the protected health information expressly authorized by such order. . . .'" *Id.* at *1 (quoting 45 C.F.R. § 164.512(e)(1)(i)).

"The requirement that documents not be produced without a court order presumes that the court, in drafting any production order, will balance the patients' privacy and confidentiality interests with the documents' relevance and a party's need for the documents, before determining whether the documents should be produced and, if so, with what constraints." *Id. See Hussein*, 2009 WL 10672479 (imposing limitations to protect patient privacy but ordering production of records of non-party hospital patients where a hospital argued one of its contracted doctors jeopardized those patients by abandoning them).

Considering *Hussein* and Defendant's failure to support its conclusory assertions that the Report is privileged, Plaintiff's Motion to Compel Defendant to comply with RFP No. 5 is GRANTED subject to these limitations: Defendant shall redact any details from the Report that could reveal a patient's identity, such as their name, relatives' names, contact information, etc. Plaintiff shall not attempt to seek any such identification information from other sources absent leave of court for good cause shown. Additionally, should any portion of the Report contain privileged physician-patient communications or other privileged information such as quality assurance documents or incident reports, Defendant shall redact such details. The redacted records shall not be shown to or discussed

with any person other than individuals working on this litigation on Plaintiff's behalf. The records shall be returned to Defendant at the conclusion of the litigation and any possible appeal, or earlier if the records are no longer needed by Plaintiff for litigation purposes.

### B. Request for Production No. 3

RFP No. 3 seeks "all complaints for the years 2020 through 2023" that relate to "medication errors or other issues with medication administration." Defendant identified one responsive document to this request: a Grievance Internal Reporting List, the production of which Defendant opposes for various reasons.

Defendant argues that incident reports and quality assurance documents such as the Grievance List are confidential and privileged pursuant to OKLA. STAT. tit. 63 § 1-1709, which provides:

> Any authorized person, hospital, sanatorium, nursing home or rest home, or other organization may provide information, interviews, reports, statements, memoranda or other data relating to the condition and treatment of any person to any of the following for use in the course of studies for the purpose of reducing morbidity or mortality: The State Board of Health, . . . [etc.] . . .
>
> All information, interviews, reports, statements, memoranda, or other data furnished by reason of this section, and any findings or conclusions resulting from such studies, are declared to be privileged communications which may not be used or offered or received in evidence in any legal proceeding of any kind or character, and any attempt to use or offer any such information, interviews, reports, statements, memoranda or other data, findings or conclusions, or any part thereof, unless waived by the interested parties, shall constitute prejudicial error in any such proceeding.

(paragraph break added). *See City of Edmond v. Parr*, 587 P.2d 56, 58 (Okla. 1978) (records kept by hospital infectious disease control committee, including those pertaining to an investigation into a patient's death due to an infection contracted at the hospital, were

9

privileged pursuant to § 1-1709); *Schniederjan v. Four Seasons Nursing Home Ctrs., Inc.*, CIV-00-1707-C, pp. 5-6 (finding a nursing home's incident reports, quality assurance documents, and written corrective action documents were not patient records but rather part of the peer review process and thus privileged from discovery).

But Plaintiff does not appear to dispute that incident reports or quality assurance or peer review documents are privileged from discovery pursuant to § 1-1709. Instead, she specifies that she is asking only for complaints, not for analysis of those complaints generated by attorneys, the quality assurance committee, or anyone affiliated with Accel.

Defendant would have the Court decide that § 1-1709 also applies to actual complaints but has failed to indicate how or why. *See Schneiderhan*, CIV-00-1707-C, at pp. 2-3 (ordering defendant nursing home to produce formal and informal complaints lodged by individuals or agencies concerning the defendant). The Court does not find the requested complaints privileged pursuant to § 1-1709.

Defendant also argues that other patients' complaints are irrelevant to the issues of the case. The Court disagrees. Complaints filed by residents pertaining to medication errors or issues are relevant to Defendant's fulfillment of its administrative and supervisory duties, as well as Plaintiff's claim for punitive damages. *See Wethington v. Swainson*, No. CIV-14-899-D, 2017 WL 1366068, at *3 (W.D. Okla. Apr. 12, 2017) (citing OKLA. STAT. tit. 23 § 9.1(A)) (punitive damages considerations include duration and awareness of the misconduct). Relatedly, Defendant expresses concerns that evidence regarding other residents' complaints would be inadmissible at trial and will not lead to admissible evidence. Defendant argues such evidence is irrelevant and highly prejudicial—but this

10

once again focuses on Defendant's assumption that Plaintiff is improperly asserting claims against Defendant for its allegedly negligent fulfillment of its administrative and supervisory duties. As this Court has already decided Plaintiff's direct negligence theories remain viable, discovery of documents potentially indicative of a pattern of negligence (such as complaints) is proper.

Defendant argues that Plaintiff's request is vague and would require Defendant to review every chart, email, and other document to find responsive complaints. But Defendant has already indicated it possesses a Grievance Internal Report List, which Plaintiff and the Court assume references any relevant complaints. The Court anticipates Defendant will be able to use such a list to identify the relevant complaints requested by Plaintiff without placing too great a burden upon Defendant.

Because the Court finds the complaints are relevant to the case issues and not entirely privileged, Defendant must produce such complaints subject to the limitations discussed below.

Defendant argues, and the Court agrees, that Plaintiff's request for complaints filed after Ms. Tidwell's death is too broad. Plaintiff contends all such complaints are relevant to persistent medication issues at Accel and whether Defendant knew or should have known about such issues. But complaints from after Ms. Tidwell's death are only minimally relevant to these issues. Defendant need only produce complaints pertaining to medication errors and administration lodged in the two years prior to the date of Ms. Tidwell's incident.

Finally, Defendant expresses concerns that these complaints include privileged and confidential health information. To the extent such complaints reveal the identities of complainants or contain personal information that could lead to their identification, Defendant must both redact such information and maintain the same level of discretion regarding those documents in the same manner as the Medication Administration Report. Furthermore, Defendant need not produce the Grievance Internal Reporting List if it is concerned doing so would reveal privileged incident reports or quality assurance documents. It must, however, produce appropriately redacted records of any existing complaints relevant to medication errors or other issues with medication administration. The Court encourages the parties to meet and confer to discuss a suitable manner of providing Plaintiff with the relevant complaints in a way that does not overly burden Defendant or risk divulging privileged information. With the aforementioned limitations, Plaintiff's RFP No. 3 is therefore GRANTED in part.

### C. Interrogatory No. 17

Plaintiff seeks to compel Defendant to provide the names of its governing body members because they are relevant to her claims that Defendant failed to fulfill its administrative and supervisory duties. Defendant disagrees, once again asserting that the issues of this case are limited only to the CMA's treatment of Ms. Tidwell, making the names of the governing body irrelevant. Pursuant to 42 C.F.R. § 483.70(d)(1), qualifying skilled nursing facilities "must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility." The names of the members of the

governing board who establish the policies are clearly relevant to Plaintiff's assertions of Defendant's direct negligence. Plaintiff's Motion to Compel Defendant to answer Interrogatory No. 17 is therefore GRANTED.

## CONCLUSION

Accordingly, Plaintiff's Motion to Compel in GRANTED subject to the limitations delineated above. Defendant has 21 days from the date of this order to supplement its discovery responses.

IT IS SO ORDERED this 23rd day of December, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE